UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE PEREZ,                          )  Case No. CV 04-8696-RC
                                     )
              Plaintiff,             )
                                     )
vs.                                  )  OPINION AND ORDER
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of the Social          )
Security Administration,            )
                                     )
              Defendant.             )
_____)

     Plaintiff Jose Perez filed a complaint on November 10, 2004,
seeking review of the Commissioner's decision denying his application
for disability benefits.  The Commissioner answered the complaint on
April 15, 2005, and the parties filed a joint stipulation on June 6,
2005.


                            **BACKGROUND**

                                **I**

     On March 1, 2002 (protective filing date), plaintiff applied for
disability benefits under Title II of the Social Security Act ("the
Act"), 42 U.S.C. § 423, and under the Supplemental Security Income

("SSI") program of Title XVI of the Act, claiming an inability to work since February 15, 2001, due to sleep apnea, chest, back and leg pain, headaches, high blood pressure, colon and rectal problems, joint cramps, and weak ankles.  Certified Administrative Record ("A.R.") 51-53, 59, 84, 373-77.  The plaintiff's applications were initially denied on September 17, 2002, and were denied again on November 20, 2002, following reconsideration.  A.R. 33-46.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Robert A. Evans ("the ALJ") on September 29, 2003.  A.R. 47, 407-17.  On November 26, 2003, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 17-24.  The plaintiff appealed this decision to the Appeals Council, which denied review on August 31, 2004.  A.R. 5-13.

## II

The plaintiff, who was born in Cuba on November 4, 1952, is currently 53 years old.  A.R. 51, 169, 375, 410.  He completed high school in Cuba, and has previously worked as a home care attendant and custodian.  A.R. 60, 65, 85, 90, 107, 410-12.

The plaintiff has received medical treatment at the Los Angeles County Harbor-UCLA Medical Center ("Harbor-UCLA"), where he has been diagnosed with, and treated for, various maladies, including headaches, diabetes mellitus, hypertension, obesity, obstructive sleep apnea,[1] recurrent anal fissures,[2] and bilateral knee joint disease.

---

[1] Obstructive sleep apnea is cessation of breathing caused by "collapse or obstruction of the airway with the inhibition of muscle tone that occurs during REM sleep.  In adults it is seen

A.R. 111-36, 145-252, 264-365, 383-406.  Plaintiff's diabetes mellitus and hypertension are well controlled with treatment.  A.R. 206-07, 269, 278, 327, 398-99.  Between January 29 and February 4, 2000, plaintiff was hospitalized at Harbor-UCLA, where he had an appendectomy and umbilical hernia repair.  A.R. 111-21.  An electro-cardiogram ("ECG") taken January 29, 2000, was normal.  A.R. 121.  On April 13, 2001, plaintiff underwent an exercise tolerance test, which showed no evidence of ischemia despite plaintiff's complaints of chest pain, and a radionuclide scan, which showed no evidence of infarct or ischemia.  A.R. 227, 229-31.  The plaintiff was again hospitalized at Harbor-UCLA between February 9 and 10, 2002, where he was diagnosed with non-cardiac chest pain.  A.R. 122-36.  Another ECG taken February 10, 2002, was again normal.  A.R. 136, 220, 329.

On May 10, 2002, Jeffrey Brand, M.D., opined that "[d]ue to multiple medical problems including severe obstructive sleep apnea, recurrent anal fissures ([plaintiff] unable to sit for long periods of time), [and hypertension], [plaintiff] is <u>disabled</u> for at least one year."  A.R. 145, 175, 177.

A chest x-ray, taken May 17, 2002, showed borderline cardiomegaly[3] and low lung volumes bilaterally.  A.R. 221.  On

primarily in middle-aged obese individuals. . . ."  <u>Id.</u> at 114.

[2]  An anal fissure is "a painful linear ulcer at the margin of the anus."  <u>Id.</u> at 679.

[3]  Cardiomegaly is "hypertrophy [the enlargement of overgrowth of an organ or part due to an increase in size of its constituent cells] of the heart."  <u>Dorland's Illustrated Medical</u>

September 9, 2002, plaintiff had another ECG, which was borderline.
A.R. 241-42, 334.  On December 17, 2002, plaintiff had an integrated
cardiopulmonary exercise test, which showed plaintiff has a moderately
limited exercise capacity, probably of a cardiac etiology and likely
worsened by plaintiff's obesity.  A.R. 318-25.  Pulmonary function
testing, also performed December 17, 2002, revealed a possible mild
restrictive ventilatory defect, mostly due to plaintiff's obesity.
A.R. 317.

Between January 21 and April 11, 2003, plaintiff received a
course of physical therapy to treat his bilateral knee degenerative
joint disease.  A.R. 295-96, 299, 302, 306, 312, 315.  An ECG taken
April 13, 2003, showed a probable early repolarization pattern in an
otherwise normal ECG.  A.R. 357.  When last examined on February 4,
2004, plaintiff's diabetes mellitus and hypertension were well
controlled, but plaintiff had chronic neck and knee pain.  A.R. 383.

On August 21, 2002, Rocely Ella Tamayo, M.D., an internist,
examined plaintiff and diagnosed him with obesity and uncontrolled
hypertension.  A.R. 137-44.  Dr. Tamayo concluded plaintiff has "no
significant functional impairment . . . at this time."  A.R. 141.

On November 8, 2002, Elliott Gilpeer, M.D., a nontreating,
nonexamining physician, opined plaintiff can occasionally lift and/or
carry up to 50 pounds, frequently lift and/or carry up to 25 pounds,
and sit, stand and/or walk for about 6 hours in an 8-hour work day.

_____

Dictionary at 287, 859.

4

1  A.R. 253-60.

2

3                            **DISCUSSION**

4                                **III**

5      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

6  review the Commissioner's decision denying plaintiff disability

7  benefits to determine if her findings are supported by substantial

8  evidence and whether the Commissioner used the proper legal standards

9  in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th

10 Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

11

12      "In determining whether the Commissioner's findings are supported

13 by substantial evidence, [this Court] must review the administrative

14 record as a whole, weighing both the evidence that supports and the

15 evidence that detracts from the Commissioner's conclusion." Reddick

16 v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,

17 246 F.3d 1195, 1201 (9th Cir. 2001).  "If the evidence can reasonably

18 support either affirming or reversing the [Commissioner's] conclusion,

19 the court may not substitute its judgment for that of the

20 [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari,

21 298 F.3d 1072, 1075 (9th Cir. 2002).

22

23      The claimant is "disabled" for the purpose of receiving benefits

24 under the Act if he is unable to engage in any substantial gainful

25 activity due to an impairment which has lasted, or is expected to

26 last, for a continuous period of at least twelve months.  42 U.S.C. §§

27 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

28 "The claimant bears the burden of establishing a prima facie case of

1  disability." <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995),

2  <u>cert.</u> <u>denied</u>, 517 U.S. 1122 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273,

3  1289 (9th Cir. 1996).

4

5      Regulations promulgated by the Commissioner establish a five-step

6  sequential evaluation process to be followed by the ALJ in a

7  disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

8  the ALJ must determine whether the claimant is currently engaged in

9  substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

10 If not, in the **Second Step**, the ALJ must determine whether the

11 claimant has a severe impairment or combination of impairments

12 significantly limiting him from performing basic work activities.  20

13 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ

14 must determine whether the claimant has an impairment or combination

15 of impairments that meets or equals the requirements of the Listing of

16 Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20

17 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the

18 ALJ must determine whether the claimant has sufficient residual

19 functional capacity despite the impairment or various limitations to

20 perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not,

21 in **Step Five**, the burden shifts to the Commissioner to show the

22 claimant can perform other work that exists in significant numbers in

23 the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

24

25      Applying the five-step sequential evaluation process, the ALJ

26 found plaintiff has not engaged in substantial gainful activity since

27 the alleged onset of disability.  (Step One).  The ALJ then found

28 plaintiff has "an impairment or combination of impairments considered

'severe'" (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). Next, the ALJ found plaintiff is able to perform his past relevant work as a home attendant and school janitor; therefore, he is not disabled. (Step Four).

## IV

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff retains to RFC "to perform the full range of medium work."[4]  A.R. 24.  In reaching this conclusion, the ALJ relied on the opinions of examining physician Dr. Tamayo, who concluded plaintiff has "no significant functional impairment[,]" and nontreating, nonexamining physician Dr. Gilpeer, who found plaintiff was limited to medium work. A.R. 21-24, 141, 253-60. These opinions constitute substantial evidence to support the ALJ's RFC assessment. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the

_____

[4]  Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

1  record supports those findings."), cert. denied, 519 U.S. 1113 (1997).

2  Nevertheless, plaintiff contends the ALJ's findings are not supported

3  by substantial evidence because the opinions of Drs. Tamayo and

4  Gilpeer are "stale," having been issued before cardiopulmonary testing

5  was performed on December 17, 2002, and the ALJ failed to obtain an

6  updated medical opinion specifically considering the cardiopulmonary

7  test results.  There is no merit to plaintiff's contentions.

8

9       "'In Social Security cases, the ALJ has a special duty to fully

10 and fairly develop the record and to assure that the claimant's

11 interests are considered.'" Smolen, 80 F.3d at 1288 (citation

12 omitted); Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

13 However, this duty "is triggered only when there is ambiguous evidence

14 or when the record is inadequate to allow for proper evaluation of the

15 evidence." Mayes, 276 F.3d at 459-60; Webb, 433 F.3d at 687.  Here,

16 "[t]he record before the ALJ was neither ambiguous nor inadequate to

17 allow for proper evaluation of the evidence." Mayes, 276 F.3d at 460.

18 Therefore, the ALJ did not fail to properly develop the medical

19 record.

20

21      Nor is this an instance where plaintiff has identified

22 significant, probative evidence in the record the ALJ failed to

23 discuss. Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995);

24 Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  To the

25 contrary, the ALJ specifically addressed the December 17, 2002

26 cardiopulmonary testing, stating "[p]ulmonary function studies dated

27 December 17, 2002 revealed possible mild restrictive ventilatory

28 defect, mostly due to obesity, as well as a moderately limited

exercise capacity on cardiopulmonary exercise testing[,]" A.R. 22, and
ultimately determined the test results did not undermine the opinions
of Drs. Tamayo and Gilpeer.  A.R. 21-24.  Plaintiff has submitted no
authority suggesting the ALJ was required to obtain a new consultative
examination or other medical opinion merely because plaintiff
submitted post-hearing evidence to the ALJ regarding further cardiac
testing, or that the cardiopulmonary testing report deprived the
earlier medical opinions of their evidentiary value.  Cf. Naber v.
Shalala, 22 F.3d 186, 189 (8th Cir. 1994).  Therefore, plaintiff's
contention is without merit, and substantial medical evidence supports
the ALJ's assessment of plaintiff's RFC.  Tonapetyan, 242 F.3d at
1149; Saelee, 94 F.3d at 522.

V

At the administrative hearing, plaintiff stated he is unable to
work because of sleep apnea, constant headaches, pain, hand cramps,
breathing problems, and fatigue.  A.R. 98, 412-13, 415.  He further
testified he uses a cane to walk because otherwise he falls, and he
can stand for only 30 minutes in an 8-hour work day.  A.R. 413-14.
Finally, plaintiff averred the heaviest weight he can lift is a five-
gallon container of water, which he can lift about once a week, but
his back hurts afterward.  Id.

Once a claimant has presented objective evidence he suffers from
an impairment that could cause pain or other nonexertional
limitations, the ALJ may not discredit the claimant's testimony
"solely because the degree of pain alleged by the claimant is not
supported by objective medical evidence." Bunnell v. Sullivan, 947

1   F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d
2   882, 885 (9th Cir. 2004).  Rather, if the ALJ finds the claimant's
3   subjective complaints are not credible, he must make specific findings
4   to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v.
5   Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  If there is medical
6   evidence establishing an objective basis for some degree of pain and
7   related symptoms, and no evidence affirmatively suggesting that the
8   claimant is malingering, the ALJ's reasons for rejecting the
9   claimant's testimony must be "clear and convincing."  Burch v.
10  Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted); Morgan
11  v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).
12
13      The ALJ found plaintiff is "not totally credible" because his
14  "subjective complaints and alleged limitations are not consistent with
15  the treatment he receives" as he "has received only conservative
16  treatment for his continuing physical complaints."  A.R. 23.  This is
17  a proper basis for rejecting an individual's pain testimony.  See,
18  e.g., Meanel, 172 F.3d at 1114 (Claimant's "claim that she experienced
19  pain approaching the highest level imaginable was inconsistent with
20  the 'minimal, conservative treatment' that she received."); Johnson v.
21  Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found
22  claimant's excess pain testimony was not credible because, among other
23  reasons, claimant's treating physician prescribed only conservative
24  treatment, "suggesting a lower level of both pain and functional
25  limitation").
26
27      The ALJ also found plaintiff is not entirely credible because it
28  was not until his employment as a home care worker had otherwise ended

1   (because the patient died) that he claimed to be disabled.  A.R. 23;

2   see also A.R. 51, 96, 375, 411.  This, too, is an appropriate reason

3   supporting the ALJ's adverse credibility finding.  Cf. Bruton, 268

4   F.3d at 828 (ALJ provided specific, cogent reasons for determining

5   claimant is not credible witness, including claimant's informing

6   physician he left work because he was laid off, not because he was

7   injured); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ

8   properly concluded claimant was not credible based, in part, on "the

9   fact that [the claimant] left work because he was laid off" rather

10  than because of his condition).

11

12      Lastly, the ALJ found plaintiff's "subjective complaints and

13  alleged limitations are out of proportion to the objective clinical

14  findings and observed functional restrictions" and "[t]he objective

15  findings do not support the severe physical limitations alleged."

16  A.R. 23-24.  "While subjective pain testimony cannot be rejected on

17  the sole ground that it is not fully corroborated by objective medical

18  evidence, the medical evidence is still a relevant factor in

19  determining the severity of the claimant's pain and its disability

20  effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001);

21  see also Burch, 400 F.3d at 681 ("Although lack of medical evidence

22  cannot form the sole basis for discounting pain testimony, it is a

23  factor that the ALJ can consider in his credibility analysis.").

24  Here, the objective medical evidence does not show plaintiff has a

25  severe impairment that would preclude him from performing medium work.

26  Further, as the ALJ noted, "[t]here is no evidence of diffuse muscle

27  atrophy that would be compatible with [plaintiff's] alleged inactivity

28  and inability to function."  A.R. 23.  Thus, "[t]he ALJ gave specific,

clear and convincing reasons for discounting [plaintiff's] testimony."
Thomas, 278 F.3d at 959; Burch, 400 F.3d at 681.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.


DATE:   March 27, 2006           /s/ Rosalyn M. Chapman
                                 ROSALYN M. CHAPMAN
                         UNITED STATES MAGISTRATE JUDGE

R&R\04-8696.MDO
3/24/06